IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAREN PHILLIPS** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 15-5204** |
| v. | : | |
| | : | |
| **NANCY A. BERRYHILL, Acting Commissioner of Social Security**[1] | : | |
| *Defendant* | : | |

NIZA I. QUIÑONES ALEJANDRO, J.                                                         MAY 22, 2017

# MEMORANDUM OPINION

**INTRODUCTION**

On September 22, 2015, Plaintiff Karen Phillips ("Plaintiff") filed a counseled complaint in which she "seeks judicial review pursuant to 42 U.S.C. 405(g) of an adverse decision of the defendant which became final" and "has exhausted administrative remedies."[2] [ECF 3]. The referenced final adverse decision was rendered by Defendant Carolyn W. Colvin, then the Acting Commissioner of Social Security ("Defendant" or "Commissioner"), and denied Plaintiff's application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f. Plaintiff claimed that her disability was based on a combination of mental impairments diagnosed as major depressive disorder ("MDD")

---

[1]      Carolyn W. Colvin ("Colvin") was the Acting Commissioner of Social Security ("Acting Commissioner") at the time Plaintiff filed this action. On January 23, 2017, Nancy A. Berryhill ("Berryhill") succeeded Colvin as Acting Commissioner. Thus, pursuant to Federal Rule of Civil Procedure 25(d), Berryhill is substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d).

[2]      Prior to the docketing of her complaint, Plaintiff filed a motion for leave to proceed *in forma pauperis*. [ECF 1]. Plaintiff's motion was granted on September 22, 2015, and the Clerk of Court was directed to docket Plaintiff's complaint. [ECF 2].

1

and post-traumatic stress disorder ("PTSD"), and physical impairments diagnosed as chronic obstructive pulmonary disease, asthma, and hyperkeratosis[3] of both feet.

On February 8, 2016, Plaintiff filed a *motion for summary judgment and request for review,* in which she argued, *inter alia*, that the Administrative Law Judge ("ALJ") committed the following errors when the ALJ improperly denied her SSI application; *to wit*: the ALJ (a) ignored pertinent evidence regarding Plaintiff's mental and physical impairments; (b) discounted certain medical testimony when assessing Plaintiff's residual function capacity ("RFC") at step four of the five-step sequential analysis; and (c) incorrectly relied on the opinion testimony of the vocational expert ("VE"). [ECF 11]. Defendant filed a response in opposition to Plaintiff's motion, [ECF 12], to which Plaintiff filed a reply brief. [ECF 15].

Consistent with 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1, this matter was randomly referred to United States Magistrate Judge Timothy R. Rice (the "Magistrate Judge") for a *Report and Recommendation* ("R&R"). [ECF 16]. On August 18, 2016, the Magistrate Judge filed the R&R and recommended that Plaintiff's request for review be denied. [ECF 17]. Plaintiff filed timely objections to the R&R, [ECF 18], and Defendant filed a response. [ECF 20].

After a comprehensive *de novo* review of Plaintiff's objections, the R&R, Defendant's responses, and the administrative record, for the reasons set forth herein, this Court finds merit to Plaintiff's first two objections and, therefore, remands this matter to the Commissioner for further proceedings consistent with this Memorandum Opinion.

---

[3] Hyperkeratosis is an overgrowth of the outer layer of the skin. *See* R&R at 2 n.5 (internal citation omitted).

## FACTUAL BACKGROUND

The factual history of this case is set forth in the R&R, and will not be recounted herein except as necessary to advance the discussion of the issues presented.

In support of her SSI application and claims of mental and physical impairments or disability, Plaintiff presented medical evidence which has been summarized as follows:

> Plaintiff first sought mental health treatment on January 9, 2013. At that time, she was evaluated by clinician Amy Marlow ("Marlow") at Wedge Medical Center ("Wedge"). (R. at 369). [4] Marlow noted that Plaintiff presented for intake with a history of depression and difficulty dealing with unsettling events from her past, (*id.*), which included a rape at gunpoint and sexual abuse by her stepfather starting at the age of thirteen. (*Id.* at 381-82). Plaintiff also reported symptoms of mood swings, persistent feelings of sadness, crying spells, psychosomatic problems, fearfulness, and emotional outbursts. (*Id.* at 369). Marlow diagnosed Plaintiff with, *inter alia*, PTSD, alcohol dependence, seizures, sleep problems, and anemia, (*id.* at 380), assigned her a global assessment of functioning (GAF) score of 45, (*id.*),[5] and recommended a treatment plan that included a psychiatric evaluation and outpatient therapy. (*Id.* at 384).
>
> Plaintiff completed a psychiatric evaluation with Dr. Minda Magundayao ("Dr. Magundayao"), a psychiatrist at Wedge, on the same day. (*Id.*). Dr. Magundayao reported that Plaintiff was neat, cooperative, and oriented, with a constricted, anxious, and depressed affect. (*Id.*). Dr. Magundayao diagnosed Plaintiff with PTSD and MDD without psychosis, (*id.* at 386), and recommended

---

[4] Citations to the administrative record will be denoted by "R." followed by the page number.

[5] A Global Assessment of Functioning ("GAF") score is a psychiatric measure of a patient's overall level of functioning. *See* American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders (DSM–IV–TR) 34 (4th ed. 2000). GAF scores are used by "mental health clinicians and doctors to rate the social, occupational and psychological functioning of adults." *Irizarry v. Barnhart,* 233 F. App'x 189, 190 n.1 (3d Cir. 2007). The GAF scale ranges from 1 to 100, with a score of 1 being the lowest and 100 being the highest. *See Debaise v. Astrue,* 2010 WL 597488, at *5 n.7 (W.D. Pa. Feb. 16, 2010). A GAF score of 41–50 indicates an individual has "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Watson v. Astrue,* 2009 WL 678717, at *5 (E.D. Pa. Mar. 13, 2009) (internal quotations omitted). A GAF score of 51–60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Debaise,* 2010 WL 597488, at *5 n.7 (internal quotations omitted).

weekly individual therapy sessions and monthly medication reviews as needed. (*Id.* at 388). There is no evidence that Plaintiff attended any therapy sessions in 2013. (*See id.* at 430).

Plaintiff returned to Wedge in September 2014 because she continued to experience symptoms of depression. (*Id.* at 403). She was evaluated by Dr. April Colbert ("Dr. Colbert"), (*id.*), a psychiatrist, who noted that Plaintiff reported she continued to experience flashbacks and nightmares, inconsistent sleeping patterns, and racing thoughts. (*Id.*). Dr. Colbert diagnosed Plaintiff with MDD and PTSD, and assigned her a GAF score of 55. (*Id.* at 414). The doctor recommended weekly therapy sessions and that Plaintiff join a support group. (*Id.* at 416). Plaintiff attended six of sixteen scheduled therapy appointments between September 2014 and March 2015, and has since abandoned therapy. (*Id.* at 402-03). Of note, neither Dr. Magundayao nor Dr. Colbert completed an RFC assessment, or indicated that Plaintiff suffered any work-related limitations as a result of her mental health diagnoses.

Plaintiff was evaluated by a consultative examiner, Dr. Floyretta Pinkard ("Dr. Pinkard"), on March 12, 2014, on a referral from the Social Security Administration ("SSA"). (*Id.* at 241-49). Dr. Pinkard noted that Plaintiff complained of bunions on both of her feet which caused her constant pain. (*Id.* at 241). Dr. Pinkard diagnosed Plaintiff with bilateral foot bunions, depression, a seizure disorder, asthma, and hypertension. (*Id.* at 244). Dr. Pinkard reported Plaintiff's gait and stance as normal, that she walked without the use of an assistive device, and that she was in no acute distress. (*Id.* at 250). Dr. Pinkard completed a Medical Source Statement of Ability to Work-Related Activities (Physical) form ("Medical Source Statement"), (*id.* at 245-249), opining that Plaintiff: could lift and/or carry up to 20 pounds on occasion, (R. at 245); stand and walk a total of two hours in an eight-hour work day, (*id.* at 246); occasionally climb stairs/ramps, balance, stoop, kneel crouch and crawl (*id.* at 248); and never climb ladders or scaffolding. (*Id*).

**LEGAL STANDARDS**

To qualify for SSI benefits, a claimant must prove a disability; *i.e.,* that she has an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a claimant is disabled, an ALJ must employ a five-step sequential evaluation process ("the five-step sequential analysis"), as outlined in the Social Security Regulations (the "Regulations"). *See* 20 C.F.R. § 416.920(a)(4). The five-step sequential analysis must be followed in order, and if the claimant is determined to be, or not to be, disabled at a particular step of the evaluation process, the evaluation does not proceed to the next step. *Id.* The five-step sequential analysis requires the ALJ to consider the following:

> At step one, [the ALJ] must determine whether the claimant is currently engaging in substantial gainful activity. If the claimant is found to be engaged in substantial activity, the disability claim will be denied; otherwise the evaluation proceeds to step two.
> At step two, the [the ALJ] must determine whether the claimant has an impairment that is severe or a combination of impairments that is severe. If the claimant fails to show that the impairment or combination of impairments is "severe," claimant is ineligible for disability benefits; otherwise, the evaluation proceeds to step three.
> At step three, the [the ALJ] must determine whether the claimant's impairment or combination of impairments is of a severity sufficient to meet or medically equal the criteria listed in Part 404, Subpart P, Appendix 1 (the "Listings").[6] If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

---

[6] If a claimant's impairment is in the Listing of Impairments or is found to be equivalent to a listed impairment, this raises a presumption of disability that makes further inquiry into work ability unnecessary. *See Sullivan v. Zebley,* 493 U.S. 521, 532 (1990). As the Magistrate Judge noted in the R&R:

> The Listing of Impairments in Appendix 1, Subpart P, Part 404 of [Title 20 of the Code of Federal Regulations] is a regulatory device used to streamline the decision-making process by identifying those claimants whose medical impairments are so severe they would be found disabled regardless of their vocational background. The Listing defines impairments that would prevent an adult, regardless of age, education, or work experience, from performing any gainful activity, not just substantial gainful activity.

R&R at 2 n.4 (internal citations omitted).

> At step four, the ALJ must first consider whether the claimant retains the residual functional capacity to perform past relevant work. The claimant bears the burden of demonstrating an inability to return to past relevant work.
>
> If the claimant is unable to resume [his] former occupation, the evaluation moves to the final step. At step five, the ALJ must determine whether the claimant, consistent with the claimant's medical impairments, age, education, past work experience, and residual functional capacity, is capable of performing other available work in the national economy. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether claimant is capable of performing work and is not disabled.

*See id.* §§ 416.920(a)(4)(i)-(v); *Dismuke v. Comm'r of Soc. Sec.,* 309 F. App'x 613, 615-16 (3d Cir. 2009); *see also Plummer v. Apfel,* 186 F.3d 422, 428 (3d Cir. 1999). A claimant bears the burden of proving steps one through four by substantial evidence. *See Plummer,* 186 F.3d at 428. At step five, the burden shifts to the Commissioner. *Id.* at 428. Here, after an evidentiary hearing and applying the five-step sequential analysis, the ALJ found Plaintiff not disabled.

Judicial review of an administrative decision is limited in scope. In reviewing a final determination that a person is not disabled and, therefore, not entitled to Social Security benefits, a court may not independently weigh the evidence or substitute its own conclusions for those reached by the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Instead, the court must review the factual findings of the ALJ to determine whether the findings are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence constitutes that which a "reasonable mind might accept as adequate to support a conclusion." *Rutherford*, 399 F.3d at 552. "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" *Id.* (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). If the ALJ's decision is supported by substantial evidence, the court may not set it aside "even if [the Court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

When considering objections to a magistrate judge's report and recommendation, a court must undertake a *de novo* review of the portions of the report and recommendation to which the plaintiff has objected. *See* 28 U.S.C. § 636(b)(1); *Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 250 (3d Cir. 1998). The court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). However, the ultimate issue to be decided is whether the Commissioner's final decision was supported by substantial evidence. *See Rutherford,* 399 F.3d at 552.

**DISCUSSION**

Plaintiff offers three principal objections to the R&R. Defendant argues that Plaintiff's objections "simply rehash" the arguments presented in Plaintiff's motion for summary judgment which were rejected by the Magistrate Judge. Notwithstanding, when reviewing objections to an R&R, this Court must make "a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Accordingly, this Court will address each objection in turn.

*Plaintiff's First Objection*

In her first objection, Plaintiff contends that the Magistrate Judge erred in approving the ALJ's evaluation regarding her mental health conditions and the resulting functional limitations, thereby overlooking the legal errors in the ALJ decision. Specifically, Plaintiff contends that the ALJ (1) failed to account for all of the functional limitations associated with her mental health impairments when assessing her RFC at step four of the five-step sequential analysis, and (2) erred when discounting certain medical evidence of record in Plaintiff's mental health services providers, specifically, treatment records from Dr. Magundayao and Dr. Colbert. (*See* Pltf.'s

Objections at 2-6) [ECF 18]. While the Magistrate Judge concluded that substantial evidence exists to support the ALJ's assessment of Plaintiff's mental RFC, this Court disagrees.

RFC is defined as the most a claimant can still do despite a claimant's physical or mental limitations. 20 C.F.R. § 416.945(a)(1). In evaluating a claimant's RFC, an ALJ must consider all relevant evidence, including medical opinions, statements from medical sources, and the claimant's statements about his/her impairments. 20 C.F.R. § 416.945(a)(3); *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001). In addition, all claimed impairments, both severe and non-severe, must be factored into an RFC determination. *Id.* at §§ 416.920(e), 416.945. The ALJ must explain the reasons for the weight given to the medical opinions, as well as the degree to which a claimant's testimony is credited. 20 C.F.R. § 404.1527(e)(2)(ii); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011). Regulations and case law generally require the ALJ to give enhanced weight to the findings and opinions of treating professionals. 20 C.F.R. § 416.927(c); *Mason v. Shalala,* 994 F.3d 1058, 1067 (3d Cir. 1993); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988). "[R]arely can a decision be made regarding a claimant's [RFC] without an assessment from a physician regarding the functional abilities of the claimant." *Gormont v. Astrue,* 2013 WL 791455, at *7 (M.D. Pa. Mar. 4, 2013) (citing *Doak v. Heckler,* 790 F.2d 26, 29 (3d Cir. 1986)). Although an ALJ is entitled to resolve conflicts in the evidence and determine the ultimate question of disability, as a lay person, the ALJ is not permitted to interpret raw medical data when evaluating a claimant's functional capacity. *See Gober v. Matthews,* 574 F.2d 772, 777 (3d Cir. 1978); *see also Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir. 1986) ("[A]n ALJ is not free to set his own expertise against that of a physician who presents competent evidence.") (quoting *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir. 1985)).

Here, at step three, the ALJ determined that Plaintiff's MDD was a non-severe impairment and that "the evidence of record does not substantiate more than minimal work-related limitations" from this condition. (R. at 19). At step four, although the ALJ acknowledged Plaintiff's history of depression, the ALJ found that Plaintiff's subjective complaints were not corroborated by her treatment records, which showed that she: (1) performed a normal range of functional abilities, such as cleaning, shopping, socializing, and attending church weekly; (2) was neat, oriented, polite, and cooperative; (3) responded to prompts and questions and had logical and organized thoughts; (4) had no hallucinations, delusions, impaired judgment, or significant memory impairment; and (5) had a normal affect and was dressed appropriately. (*See id.* at 23, 25). The ALJ noted that Plaintiff's treatment history during the relevant time period was sporadic, (*see id.* at 25), and that her GAF scores were indicative of only moderate impairment in her social or occupational functioning, (*see id.* at 26), and concluded that Plaintiff's MDD does not limit her ability to function or work. (*Id.*).

While these facts are relevant, remand is warranted on the ground that the ALJ's assessment of Plaintiff's RFC is not supported by a residual functional capacity assessment done by either a treating or examining physician. Although there is substantial evidence in the record that Plaintiff suffers from anxiety and depression, no one, not even Plaintiff's treating physicians, completed a functional assessment of her mental health limitations. Because no RFC assessment was done by a medical provider, the ALJ's RFC findings were apparently based on the ALJ's own lay opinion. As Plaintiff notes in her objection, she suffers from repeated flashbacks of violent sexual assaults she endured as a child, hypervigilance, fear of the dark, and limited social interactions, all of which are symptoms that could conceivably affect her mental RFC assessment. However, without the benefit of a medical opinion and RFC assessment of

9

Plaintiff's mental impairments, singularly or in combination with her physical impairments, we are left to speculate. Accordingly, this Court cannot conclude that the RFC determination at step four is supported by substantial evidence in the record. As such, Plaintiff's first objection is sustained.

### *Plaintiff's Second Objection*

In her second objection, Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions offered by Dr. Pinkard, the SSA's consultative medical examiner, who evaluated Plaintiff and rendered a residual functional capacity assessment of Plaintiff's physical limitations. Specifically, Plaintiff contends that the Magistrate Judge erred in finding that the ALJ properly rejected Dr. Pinkard's opinions regarding Plaintiff's limitations in carrying, lifting and walking which, Plaintiff argues, if accepted, would have precluded Plaintiff from engaging in light work.

As reflected in the decision, the ALJ considered the Medical Source Statement prepared by Dr. Pinkard at the step four assessment. (*See* R. at 241-49). In the Medical Source Statement, Dr. Pinkard opined that; *to wit*: Plaintiff could lift and/or carry up to twenty pounds on occasion, stand and walk a total of two hours in an eight-hour work day, occasionally climb stairs/ramps, balance, stoop, kneel crouch and crawl, and never climb ladders or scaffolding. (*Id*. at 245-48). The ALJ indicated that Dr. Pinkard's opinion was assigned "great weight," except for the proposed limitations for standing and walking, which the ALJ found were "overstated and not supported." (*Id*. at 24). However, the ALJ provides no explanation or reason for the rejection of this portion of Dr. Pinkard's opinion. Plaintiff contends that, if accepted, Dr. Pinkard's opinion that she could only occasionally lift and/or carry up to twenty pounds would compel a finding that she is only capable of performing sedentary, as opposed to light, work and, therefore, under

the SSA medical-vocational guidelines or the so-called "Grids,"[7] she would be deemed disabled. Although this Court is unable to agree with Plaintiff that based on the Grids she is entitled to benefits, this Court agrees that the ALJ's findings regarding her physical residual limitations are inconsistent with the Regulations and, therefore, warrant remand for additional consideration at step four. A claimant's RFC can be classified sedentary, light, medium heavy or extra heavy.

The Regulations define light work as follows:

(b) *Light work:* Light work involves lifting no more than 20 pounds at a time with *frequent lifting or carrying* of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 416.967(b) (emphasis added). Here, the ALJ found that Plaintiff was capable of performing light work with some limitations, none of which pertained to carrying and/or lifting; and that she could *occasionally* lift and/or carry up to twenty pounds. (R. at 25). However, under the Regulations, a person deemed capable of performing light work must be able to lift or carry up to ten pounds *frequently*, and do a fair amount or good deal of walking. 20 C.F.R. § 416.967(b). In the decision, the ALJ neither explains or reconciles this obvious inconsistency, nor explicitly rejects Dr. Pinkard's carrying/lifting opinions.

---

[7] As discussed *supra,* at step five the ALJ has the obligation of developing a full and fair record regarding the vocational opportunities available to a claimant. This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [hereinafter the "Grids"], found at 20 C.F.R., Part 404, Subpart P, Appendix 2. *See Sykes v. Apfel*, 228 F.3d 259, 263-264 (discussing the history and applicability of the Grids). "The [G]rids consist of a matrix of four factors—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Id.* at 263. However, when a claimant has a nonexertional impairment, defined as any impairment that does not affect the claimant's ability to meet the strength demands of jobs, the Grids are inapplicable. *See id.* at 263, 269. Instead, when a claimant presents with either nonexertional impairments or a mix of exertional and nonexertional impairments, an ALJ will often rely on testimony from VEs or other evidence when making a step-five determination. *Id.* at 270.

While the ALJ is not required to accept all of Dr. Pinkard's opinions regarding Plaintiff's carrying/lifting limitations, the ALJ is required to be "explicit about what evidence was considered and what evidence was rejected." *Frazier v. Comm'r of Soc. Sec.*, 240 F. App'x 495, 498 (3d Cir. 2007) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)); *see also Burnett*, 220 F.3d at 122 (3d Cir. 2000) ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reasons for discounting such evidence.") (internal citations omitted). Because the ALJ failed to adequately articulate the evidentiary basis for the determination of Plaintiff's RFC, remand is necessary to allow the ALJ to clarify what weight, if any, was afforded to Dr. Pinkard's physical limitation opinions when the ALJ reached his conclusion that Plaintiff was capable of performing a limited range of light work; and/or reconcile the step-four findings with the demands of light work, as defined by the Regulations. The directives set forth in *Frazier* and *Burnett* require an ALJ to state as much and give a reason for discounting certain medical opinions. Accordingly, Plaintiff's second objection is sustained.

### *Plaintiff's Third Objection*

In this third objection, Plaintiff raises issues involving the VE. Specifically, Plaintiff challenges the Magistrate Judge's support of the ALJ's determination at step five, and argues that: (1) the ALJ failed to resolve the potential conflict between the VE's testimony and the Dictionary of Occupational Titles ("the DOT"); (2) the VE's testimony was erroneous and so unreliable that it should have been discounted; and (3) the ALJ erred in not including all of Plaintiff's impairments in the hypothetical questions posed to the VE.

*Potential Conflicts Between the VE's Testimony and the DOT*

Plaintiff argues that the ALJ erroneously found at step five that, given Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. In arriving at this conclusion, the ALJ relied, in part, on the VE's testimony that an individual with Plaintiff's RFC could perform the representative occupations of: bottle packer, label coder, and garment bagger. (*See* R. at 28). The Magistrate Judge found no error. Plaintiff objects and contends the VE's testimony conflicts with the DOT descriptions for the aforementioned occupations.

At step five of the disability inquiry, the Commissioner bears the burden of establishing the existence of jobs in the national economy that an individual with claimant's impairments is capable to perform. *See* 20 C.F.R. § 416.920(g); *Kangas v. Bowen,* 823 F.2d 775, 777 (3d Cir. 1987). To determine what type of work (if any) a particular claimant is capable of performing, the Commissioner uses "a variety of sources of information, including the DOT, the SSA's own regulatory policies and definitions (found in the Code of Federal Regulations ("CFR")), and testimony from VEs." *Zirnsak v. Colvin,* 777 F.3d 607, 616 (3d Cir. 2014). As a general rule, occupational evidence provided by the VE should be consistent with the occupational evidence presented in the DOT. *Id.* at 617 (citing *Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*, Social Security Ruling 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000) [hereinafter "SSR 00-4p"]). If a conflict arises between the VE's testimony and the DOT, the ALJ "must elicit a reasonable explanation for the conflict." SSR 00-4p; *see also Burns*, 312 F.3d at 127. As the Third Circuit further explained in *Zirnsak*:

> To ensure consistency, courts have imposed an obligation on ALJs to [i]dentify and obtain a reasonable explanation for any conflicts

> between occupational evidence provided by VEs . . . and information in the [DOT]. Specifically, an ALJ is required to (1) ask, on the record, whether the VE's testimony is consistent with the DOT, (2) elicit a reasonable explanation where an inconsistency does appear, and (3) explain in its decision how the conflict was resolved.

777 F.3d at 617 (internal citations and quotations omitted). Remand may be appropriate where the ALJ fails to comply with these requirements. *See id.; Rutherford,* 399 F.3d at 557. However, "the presence of inconsistencies does not *mandate* remand, so long as substantial evidence exists in other portions of the record that can form an appropriate basis to support the result." *Zirnsak,* 777 F.3d at 617 (internal citation and quotations omitted).

Plaintiff alleges that the VE's testimony conflicted with the information in the DOT in two ways. First, Plaintiff argues that the VE's opinion that Plaintiff was capable of working the aforementioned representative occupations with a sit/stand option directly conflicts with the DOT descriptions of those occupations, which are silent on whether these jobs can be performed with a sit/stand option. The second alleged inconsistency involves the VE's testimony that Plaintiff was capable of working as a bottle packer despite her postural limitations. Plaintiff argues that the strength requirements for a bottle packer require more than the occasional use of foot controls.

As a threshold matter, the ALJ properly addressed the apparent inconsistencies. Of note, at the end of the VE's testimony, the ALJ specifically asked the VE whether her testimony had been "consistent with the Dictionary of Occupational Titles." (R. at 59). The VE responded that her testimony was consistent with the DOT, and acknowledged the fact that the DOT does not address a sit/stand option for the representative occupations she testified Plaintiff was capable of performing. (*Id.*). In the decision, the ALJ explained that, although the DOT does not explicitly

provide for a sit/stand option for any representative occupation, he relied on the VE's experience and expertise. (*Id.* at 28).

Nonetheless, Plaintiff argues that because the DOT is silent on whether these occupations can be performed with a sit/stand option, the VE's testimony is in direct conflict with the DOT, and these inconsistencies should have been explained by the VE and resolved by the ALJ in the decision. This Court disagrees. The Third Circuit Court of Appeals has recognized that the DOT's silence with regard to the sit/stand option does not place it in conflict with jobs identified by a VE. *See, e.g., Sanborn v. Comm'r of Soc. Sec.,* 2015 WL 3452872, at *6 (3d Cir. June 1, 2015); *see also Horn v. Colvin,* 2013 WL 1386836, at *4 (W.D. Pa. Apr. 4, 2013); *Conn v. Astrue,* 852 F.Supp.2d 517, 528 ( D. Del. 2012) ("[T]he VE's testimony and the DOT are not in conflict; the DOT simply does not address sit/stand options."). Therefore, the ALJ is not obligated to resolve an inconsistency that did not exist. *See Jones v. Barnhart,* 364 F.3d 501, 506 n.6 (3d Cir. 2004) ("[The Third Circuit] has not adopted a general rule that an unexplained conflict between a VE's testimony and the DOT necessarily requires reversal.") (internal quotations omitted). As the DOT is silent on the sit/stand option, the VE was entitled to rely on her own "education, training, and experience" to opine about Plaintiff's ability to maintain a job. *See Conn,* 852 F. Supp. 2d. at 528. Here, the ALJ did not run afoul of SSR 00-4p by accepting the VE's opinion that the proffered occupations were consistent with Plaintiff's standing limitations.

This Court, however, cannot reach the same conclusion with respect to inconsistencies between VE's testimony and the strength requirements for bottle packers as set forth in the DOT. Here, the VE opined that someone with Plaintiff's postural limitations, *i.e.*, an individual limited to occasional operation of foot controls, could perform the requirements of a bottle packer. The

DOT description of the bottle packer positions indicates that the job requires the use of a pedal. Plaintiff argues this requirement cannot be met due to her hyperkeratosis. (*See* Pltf.'s Objections at 11-12). It is unclear from the DOT description whether this occupation requires the use of constant or occasional foot controls. Nevertheless, the description itself seems to suggest that the job requires constant use of foot controls:

> Tends machine that inserts filled beer bottles into cardboard cartons: Positions empty carton on platform below automatic packer. Presses pedal to raise platform to packer level and to deposit bottles in carton. Releases pedal and pushes full carton onto conveyor. Straightens or resets partitions in carton.

DOT § 920.685-026.

Given Plaintiff's postural limitations, the ALJ was required to acknowledge this potential conflict and provide resolution of it. A review of the record, however, does not reveal any acknowledgement of the conflict or any attempt to resolve it. Accordingly, this portion of Plaintiff's third objection is sustained. On remand, the ALJ is instructed to address this inconsistency and resolve it, in accordance with SSR 00-4p.

*Reliability of the Vocational Expert's Testimony*

Plaintiff argues that the VE's testimony was so unreliable it undermined the ALJ's findings at step five. Specifically, Plaintiff contends that the ALJ erred in relying upon the VE's testimony, which Plaintiff alleges contains systemic misunderstandings of the DOT descriptions and of the identified representative occupations that are inconsistent with Plaintiff's physical limitations and the hypothetical questions posed. As a vocational determination at step five is necessarily tied to the RFC findings made at step four, this objection need not be addressed in light of this Court's decision to remand this matter for additional developments and findings. Nonetheless, this Court finds no merit to this argument as posed. Here, the VE, who the parties stipulated was a qualified expert, (R. at 54), based her testimony on the DOT and her own

professional expertise. During the hearing, Plaintiff's counsel had ample opportunity to cross examine the VE on her methodologies and any purported inconsistencies between her testimony and the DOT descriptions for the representative occupations. During the hearing, Plaintiff's counsel posed no question or raise any objection either to the VE's qualifications generally, to her competency to offer vocational testimony in this case, or specifically to her opinions. Despite having a full and fair opportunity to challenge the VE's expertise, qualifications, and/or methodology during the hearing, Plaintiff failed to do so. Although this Court appreciates that there may be occasions that require an ALJ to question the reliability of opinions offered by a VE, *see Brault v. Soc. Sec. Admin.,* 683 F.3d 443, 450 (2d Cir. 2012) ("We do *not* hold that an ALJ *never* need question [the] reliability [of a VE's testimony]"), this Court finds no reason to do so here since, upon remand, the ALJ will have another opportunity to assess the reliability of the VE's testimony and/or methodologies. This portion of Plaintiff's objection is overruled.

*Hypothetical Question Posed to the Vocational Expert*

Finally, Plaintiff argues that the ALJ's finding at step five is not supported by substantial evidence because the hypothetical questions posed to the VE did not fully reflect the limitations imposed by Plaintiff's mental impairments, *i.e.,* that she suffers from her moderate limitations in concentration, persistence and pace.[8] In support of her argument, Plaintiff relies on *Ramirez v. Barnhart,* 372 F.3d 546 (3d Cir. 2004), for the proposition that an ALJ's hypothetical limiting the plaintiff to simple, one-to-two step tasks did not adequately portray the claimant's mental impairments. *See Ramirez,* 372 F.3d at 554. Plaintiff's reliance on *Ramirez* is misplaced and is distinguishable from her case. In *Ramirez,* the claimant had a history of anxiety, depression,

---

[8] The Regulations require an ALJ to follow a special procedure when evaluating the severity of mental impairments. *See* 20 C.F.R. § 416.920a. Under this special procedure, the ALJ must evaluate allegations of mental impairment by rating the degree of a claimant's limitations in four broad functional areas, including, *inter alia,* the ability to concentrate, persist, or maintain pace, *see id.* § 416.920a(c)(3), on a five-point scale: none, mild, moderate, marked, and extreme. *Id.* § 416.920a(c)(4).

17

social phobia, obsessive compulsive disorder, mood incongruent hallucinations, and "*often suffered from deficiencies in concentration, persistence, and pace.*" *Ramirez,* 372 F.3d at 554 (emphasis in original). By contrast, here the record shows that Plaintiff suffers from moderate limitations in concentration, persistence, and pace. The Third Circuit has drawn a distinction between a plaintiff that "often" suffers from deficiencies in concentration, persistence, and pace, and those, like Plaintiff, that suffer only moderate deficiencies. *See McDonald v. Astrue*, 293 F. App'x 941 (3d Cir. 2008) (hypothetical limiting plaintiff to simple, routine tasks accounted for plaintiff's moderate deficiencies in concentration, persistence and pace); *see also Menkes v. Astrue*, 262 F. App'x 410-12 (3d Cir. 2008) (same); *Reid v. Astrue,* 2009 WL 2710243, at *6 (E.D. Pa. Aug. 28, 2009) ("Because the hypothetical question limited plaintiff to simple, repetitive tasks, the question was sufficiently descriptive to encompass the finding that plaintiff had moderate difficulties in concentration, persistence and pace.") (internal citations omitted).

This Court will reserve any additional opinion on this issue, however, since this matter is remanded for additional development at steps four and five. On remand, the ALJ, who will have another opportunity to question a vocational expert in this matter, is instructed to ensure that any and all hypotheticals posed to the VE include all of Plaintiff's "credibly established limitations." *See Rutherford,* 399 F.3d at 554.

**CONCLUSION**

For the reasons stated herein, Plaintiff's objections are sustained, in part, and the *motion for summary judgment and request for review* is granted. This matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the instructions herein, including, *inter alia*, a reassessment and evaluation of Plaintiff's mental limitations and residual functional capacity by a qualified physician, medical provider, or therapist. *Cf. Doak,*

790 F.2d at 27-29 (directing remand upon determination that ALJ's conclusion that the claimant has the RFC to perform light work was not supported by substantial evidence in the record); *see also Fargnoli,* 247 F.3d at 41 (explaining that the ALJ must provide "a clear and satisfactory explication of the basis on which [his RFC assessment] rests"). On remand, the ALJ shall also resolve the various deficiencies and errors at step five, as discussed herein. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, ASDIC.